UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

United States of America,

        Plaintiff,

                            REPORT AND RECOMMENDATION

vs.

Jermaine Lee Gibson,

        Defendant.                            Crim. 05-245 (JNE/RLE)

* * * * * * * * * * * * * * * * * * *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the following Pretrial Motions of the Defendant:

    1.   The Defendant's Motion to Suppress Evidence Obtained with a Warrant.

    2.   The Defendant's Second Motion to Suppress Evidence Obtained with a Warrant.

A Hearing on the Motions was conducted on August 22, 2005, at which time, the Defendant appeared personally, and by Kevin C. Cornwell, Esq., and the Government appeared by Thomas M. Hollenhorst, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendant's Motions to Suppress Evidence Obtained with a Warrant be denied.

## II.   Factual Background

The Defendant is charged with the following offenses: 1) one Count of distributing in excess of five (5) grams of a mixture and substance containing a detectable amount of Cocaine Base, a controlled substance, in violation of Title 21 U.S.C. §§841(a)(1), and 841(b)(1)(B), which is said to have occurred on or about February 8, 2005; 2) one Count of distributing in excess of five (5) grams of a mixture and substance containing a detectable amount of Cocaine Base, a controlled substance, in violation of Title 21 U.S.C. §§841(a) (1), and 841(b)(1)(B), which is said to have occurred on or about February 9, 2005; 3) one Count of distributing a mixture and substance containing a detectable amount of methamphetamine, a controlled substance, in violation of Title 21 U.S.C. §§841(a)(1), and 841(b)(1)(C), which is said to have occurred on or about March 31, 2005; 4) one Count of distributing in excess of five (5) grams of a mixture and substance containing a detectable amount of Cocaine Base, a controlled substance, in violation of Title 21 U.S.C. §§841(a)(1), and 841(b)(1)(B), which is said to have occurred on or about May 19, 2005; 5) one Count of distributing in excess of five (5) grams of a mixture and substance containing a

detectable amount of Cocaine Base, a controlled substance, in violation of Title 21 U.S.C. §§841(a) (1), and 841(b)(1)(B), which is said to have occurred on or about May 20, 2005; and 6) one Count of possessing with an intent to distribute in excess of five (5) grams of a mixture and substance containing a detectable amount of cocaine, a controlled substance, in violation of Title 21 U.S.C. §§841(a)(1), and 841(b)(1)(B), which is said to have occurred on or about May 21, 2005.  As pertinent to those charges, and to the Motions now before us, the operative facts may be briefly summarized.[1]

At the Motions Hearing, the Government elicited the testimony of Rodney M. Wilson ("Wilson"), who is a Police Officer with the Duluth Police Department Special Investigations Unit (Lake Superior Drug Task Force), and who was involved in the investigation of the events that gave rise to the pending charges.  On May 20, 2005, Wilson completed an Application for a Search Warrant, and a Supporting Affidavit,

---

[1] Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

to search the premises at 1232 East 1ˢᵗ Street, Apartment "B," as well as the person of Defendant. In support of the Warrant, Wilson testified that he had received information that crack cocaine was being sold from inside that residence. Wilson was also aware of five (5) previous controlled purchases of crack cocaine, which were consummated with the Defendant, since February of 2005. Police were previously unable to execute a Search Warrant at that residence, as law enforcement had been unable to pinpoint the Defendant's address until they recently received information concerning the residence identified in the Warrant.

Two (2) of the controlled purchases had occurred outside of that residence after the Defendant was leaving the home, although none of the purchases had actually been made inside that residence. Prerecorded "buy money" was also employed in the controlled sales. As the ongoing and prior sales had occurred at night, after 8:00 o'clock p.m., Wilson was concerned that the controlled substances would be lost unless the Warrant authorized a nighttime search. After the fifth controlled purchase, law enforcement observed the Defendant leaving the residence in a vehicle bearing Minnesota license plate number NJA-217.[2] Wilson had also personally observed the

---

[2] The original Warrant Application reported that the Defendant was observed in a maroon Chevy Caprice bearing license plate number NJA-317. At the Hearing,
(continued...)

Defendant, during surveillance, on at least three (3) occasions driving that vehicle, even though the Defendant did not possess a valid drivers license.

Police officers executed the Search Warrant in the premises at approximately 1:40 o'clock a.m., May 21, 2005. A search of the apartment yielded 15.7 grams of crack cocaine, and two digital scales. The Defendant was not in his residence at the time of the search. While waiting outside the residence, Investigator Kazel observed a maroon car, and identified the Defendant as the driver. The vehicle was stopped on the Duluth side of the Blatnik Bridge, but another person was driving the vehicle. A police officer called, from a cell phone to the residence, for someone to come and pick up the vehicle.

Later that morning, police officers positively identified the Defendant driving the maroon car. Based upon the identification of Defendant, who was named in the Warrant, the officers stopped the car, for a second time, at approximately 3:30 o'clock a.m. The officers had not observed the driver committing any traffic violations. The Defendant was arrested, was subjected to a warranted search, and was found to

---

[2](...continued)
Wilson testified that the Defendant had been spotted in a maroon car which bore license plate number NJA-217.

possess $2,000.00, including approximately $1,400.00 of the "buy money" that had been exchanged for drugs, in the prior controlled sales with the Defendant.

### III. Discussion

A. <u>The Defendants' Motion to Suppress Evidence Obtained With a Warrant</u>.

The Defendant contends that the information contained in the Application and Affidavit for a Search Warrant did not support the issuance of a Search Warrant authorizing a nighttime search of the Defendant's premises. We disagree.

1. <u>Standard of Review</u>. The Fourth Amendment requires that "a search warrant must be issued by a neutral and detached magistrate," <u>Technical Ordnance Inc. v. United States</u>, 244 F.3d 641, 647 (8th Cir. 2001), citing <u>Johnson v. United States</u>, 333 U.S. 10, 13-14 (1948), who will "assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband." <u>United States v. Winningham</u>, 953 F. Supp. 1068, 1077 (D. Minn. 1996), citing <u>Warden v. Hayden</u>, 387 U.S. 294 (1967); <u>United States v. Johnson</u>, 64 F.3d 1120, 1126 (8th Cir. 1995). A finding of probable cause must be based upon a consideration of all of the circumstances set forth in the supporting Affidavit, and is proper when a "fair probability [exists] that * * * evidence of a crime will be found

in a particular place," or when "'a substantial basis [exists] for * * * conclud[ing]' that a search would uncover evidence of wrongdoing." United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999), quoting Illinois v. Gates, 462 U.S. 213, 236, 238 (1983), quoting, in turn, Jones v. United States, 362 U.S. 257, 271 (1960); see also, United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995); United States v. Tagbering, 985 F.2d 946, 949 (8th Cir. 1993).

Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts" and, as such, is "not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, supra at 232; see also, Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 435 (2001); Ornelas v. United States, 517 U.S. 690, 697 (1996). In considering the issuance of a Search Warrant, probable cause must be viewed under a reasonableness standard, "the touchstone of the Fourth Amendment," which "is measured in objective terms by examining the totality of the circumstances." Ohio v. Robinette, 519 U.S. 33, 39 (1996), quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991).

Search Warrant "[a]pplications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998); United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993).

"In conducting such an examination, the Court should review the affidavits as a whole, and not on a paragraph-by-paragraph basis." United States v. Winningham, supra at 1077, citing United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991); United States v. Townsley, 843 F.2d 1070, 1076-77 (8th Cir. 1988). Under the Fourth Amendment's preference for searches conducted pursuant to Warrants, see, Illinois v. Gates, supra at 236, Courts reviewing Search Warrants are to "accord great deference to the decision of the Judicial Officer who issued the Warrant," and must not engage in a de novo review. United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995); see also, Walden v. Carmack, supra at 870.

Generally, Search Warrants are preferably executed during daytime hours. See, Rule 41(e)(2)(B), Federal Rules of Criminal Procedure. However, nighttime searches, particularly in cases involving controlled substances, have been recognized as appropriate and acceptable. See, Title 21 U.S.C. §879. In United States v. Berry, 113 F.3d 121, 123 (8th Cir. 1997), the Court noted that Section 879 applied when a Search Warrant involved controlled substances. According to Section 879, "[a] search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and

for its service at such time." In interpreting Section 879, the Court, in Berry, found that its decisions, which addressed the then current version of Rule 41(c)(1), Federal Rules of Criminal Procedure, were relevant.[3]

The Court went on to observe that it has previously "held that night searches are not per se unconstitutional and thus 'suppression is not automatic' if Rule 41(c)(1) is violated," and that, "[i]nstead, we consider whether the 'defendant is prejudiced or reckless disregard of proper procedure is evident.'" Id. at 123, quoting United States v. Schoenheit, 856 F.3d 74, 77 (8th Cir. 1988), and quoting United States v. Bieri, 21 F.3d 811, 816 (8th Cir. 1994)("Here, the warrant was not unconstitutional and the [Defendants] suffered no prejudice because authorization for a night search does not need to be listed on the warrant."), cert. denied, 513 U.S. 878 (1994); see also, United States v. Harris, 324 F.3d 602, 606 (8th Cir. 2003). Therefore, Search Warrants that are executed in connection with searches for, and the seizures of controlled

---

[3]Rule 41(c)(1), Federal Rules of Criminal Procedure, formerly stated that "[t]he warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." United States v. Berry, 113 F.3d 121, 123 (8th Cir. 1997). In its current version, Rule 41(e)(2)(B) contains a similar provision, in that it provides that "[t]he warrant must command the officer to * * * execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time."

substances, can be appropriately executed at night, especially when supported by probable cause.

      2. <u>Legal Analysis</u>. Since Section 879 explicitly allows the nighttime execution of Search Warrants pertaining to controlled substance offenses, so long as there is probable cause or the nighttime search, in keeping with the holding, in <u>Berry</u>, we look to whether the issuing Judicial Officer reasonably found probable cause for allowing a nighttime search.

 Here, the Search Warrant was issued on the basis of Wilson's Application and Supporting Affidavit, which plainly provided probable cause to search the specified residential premises, and the person of the Defendant. In addition, given the attestations of Wilson, the issuing Judicial Officer expressly authorized a nighttime search in order to minimize the destruction of incriminating evidence. We also find probable cause for the nighttime search, as had the issuing Court. The probable cause for the search is detailed in a number of controlled buys, from the Defendant, as confirmed by the statements of five or six confidential informants, who all had demonstrated, to Wilson's satisfaction, that their confidences were reliable based on their prior track records, and corroborating information which Wilson, and other law enforcement officers, had gathered.

We are mindful that, when probable cause for an arrest is based on information provided by an informant, "'a key issue is whether that information is reliable.'" United States v. Koons, 300 F.3d 985, 993 (8th Cir. 2002), quoting United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998); see also, United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)("[T]he informant's reliability, veracity, and basis of knowledge are relevant considerations -- but not independent, essential elements -- in finding probable cause."). As our Court of Appeals has stated:

> In [Illinois v.] Gates, the Supreme Court explained that an informant's reliability and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." * * * 462 U.S. at 233, 103 S.Ct. at 2329.

United States v. Olson, 21 F.3d 847, 850 (8th Cir. 1995).

As a result, "'an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination.'" Id., citing United States v. Anderson, 933 F.2d 612, 615 (8th Cir. 1991).

Consequently, the "core question" is whether the information provided by the informant was reliable. See, United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)("The core question in assessing probable cause based upon information

supplied by an informant is whether the information is reliable."). Moreover, "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause." United States v. Wright, supra at 975. In turn, an informant is deemed reliable when his/her statements are corroborated by independent evidence. See, United States v. Carpenter, 341 F.3d 666, 669 (8th Cir. 2003) ("[C]orroboration of minor, innocent details may support finding of probable cause."), citing United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001); see also United States v. Koons, 300 F.3d 985, 993 (8th Cir. 2002)("'Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.'"), quoting United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998); United States v. Formaro, 152 F.3d 768, 770 (8th Cir. 1998)("[C]orroboration of the confidential informant's information by independent investigation is an important factor in the calculus of probable cause.").

Here, we have no difficulty in concluding that the Confidential Informants were reliable, as their reliability had been demonstrated by a past track record, by the independent observations of the officers during the controlled buys, and by independent corroboration of information provided by the informants. Nor do we find

the absence of evidence, that any controlled buy occurred in the residence to be searched, as a proper basis upon which to invalidate the Search Warrant.  As our Court of Appeals observed, in <u>United States v. Hulett</u>, 22 F.3d 779, 780 (8th Cir. 1994), "[f]ew places are more convenient tha[n] one's residence for use in planning criminal activity and concealing fruit of a crime."  See also, <u>United States v. Etheridge</u>, 168 F.3d 495, 1998 WL 792467 at **1 (8th Cir., November 18, 1998)("Since it is well known that drug traffickers routine keep packaging equipment, ledgers, and other incriminating items in their living quarters, the affidavit provided sufficient reason to believe that [the defendant's] residence would contain evidence of criminal activity."); <u>United States v. Formaro</u>, 152 F.3d 768, 770 n. 2 (8th Cir. 1998); <u>United States v. Premises Known as 6040 Wentworth Ave. South Mpls.</u>, 1996 WL 260745 at * 4 (D. Minn. 1996), aff'd, 123 F.3d 685 (8th Cir. 1997); <u>United States v. Luloff</u>, 15 F.3d 763,768 (8th Cir. 1994).  Here, Wilson's averments, as contained in the opening paragraphs of his Affidavit, that drug traffickers keep detailed writings, packaging materials, and weighing devices, tend to corroborate the nexus between a drug dealer's home, and his illegal drug activities, particularly when coupled with the fact that the last controlled sale occurred in close proximity to the residence to be searched.

Nor do we find the information contained in Wilson's Affidavit to be unduly stale, as Wilson details continuing drug sales up to within twenty-four (24) hours of his Application to the issuing Court. Similarly, we find that the issuing Court's authorization of a nighttime search was supported by probable cause, given Wilson's attestation that certain of the controlled drug purchases occurred at night, that the Defendant was observed in the possession of a firearm, that Wilson knew, from past experience and training, that "distributors of controlled substances continue to sell these controlled substances until the controlled substances are gone," and he "believe[d] that a delay in the execution of this search warrant would result in the loss of the controlled substances being sold from 1232 East 1st Street, apartment #B, Duluth, Minnesota." Government Exhibit 1, at p. 00054. Therefore, we find no merit to the Defendant's contention that the Search Warrant in question was either issued without probable cause, or that the nighttime search, which was authorized by the Search Warrant, was not supported by probable cause.[4]

---

[4] Independently, we have reviewed the specificity of the Warrant, as to both the items to be seized, and the premises, or persons, to be searched, and we find no fatal flaws.

    B.    <u>The Defendant's Second Motion to Suppress Evidence Obtained With a Warrant</u>.

The Defendant also challenges the admissibility of the evidence that law enforcement seized from the Defendant during the traffic stop of his vehicle, near the Blatnik Bridge, which occurred at 3:30 o'clock a.m. For reasons already expressed, we reject any notion that the nighttime search was not properly authorized, or that the search of the Defendant's person was not supported by probable cause. Rather, we limit our analysis to the sole issue raised by the Defendant -- namely, that, in the absence of a traffic violation, the stop was unlawful.

First, there is no dispute, in the evidence before us, that the officers who initiated the stop of the Defendant's vehicle had identified the Defendant as the vehicle's driver. Having recognized the Defendant and, in view of the valid Warrant, for the search of his person, the traffic stop was proper. In any event, we find that the police had probable cause to stop the Defendant's vehicle, even if they had no Warrant authorizing a search of his person. In order to stop a vehicle for investigatory purposes, officers needed only a reasonably articulable suspicion that the occupant of a vehicle was engaged in criminal activity. See <u>United States v. Briley</u>, 319 F.3d 360, 364 (8th Cir. 2003)("An investigatory stop of a vehicle does not violate the Fourth Amendment where the police have a reasonable suspicion that the occupant of the

vehicle is engaged in criminal activity."), citing United States v. Mora-Higuera, 269 F.3d 905, 909 (8th Cir. 2001), cert. denied, 537 U.S. 828 (2002). "There is no requirement that there be a traffic violation."[5] Id., quoting United States v. Mora-Higuera, supra at 909. Here, the officers who effected the traffic stop of the Defendant had probable cause to believe, and not merely a reasonably articulable suspicion, that the Defendant was engaged in illegal activity. See United States v. Henderson, 645 F.2d 627, 629 (8th Cir. 1981), cert. denied, 454 U.S. 829 (1981).[6] Accordingly, we find no Fourth Amendment violation in the traffic stop of the Defendant's vehicle, and we recommend that the Defendant's Motion to Suppress also be denied in that regard.

---

[5] Although we need not, and do not reach the question, we also have substantial doubt that a traffic violation was not presented, in view of Wilson's knowledge that the Defendant did not possess a valid drivers license.

[6] Notably, in both United States v. Briley, 319 F.3d 360, 364 (8th Cir. 2003), and United States v. Henderson, 645 F.2d 627, 629 (8th Cir. 1981), cert. denied, 454 U.S. 829 (1981), the defendants were subject to traffic stops, which were effected because law enforcement had secured Warrants for the search of their respective residences, and wanted to inform the defendants of the Warrants, and of the officers' request that the defendants be present during the searches. During the course of each of the respective traffic stops, incriminating evidence was seized, and each defendant sought to suppress the evidence on the basis of a Fourth Amendment violation. In both cases, the Court of Appeals concluded that reasonable suspicion, if not probable cause, authorized the stops, and no Fourth Amendment violation occurred. We find the circumstances presented, here, to be stronger in compelling a denial of the Defendant's Motion to Suppress the search of his person as a result of the traffic stop.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Defendant's Motion to Suppress Evidence Obtained with a Warrant [Docket No. 19] be denied.

2. That the Defendant's Second Motion to Suppress Evidence Obtained with a Warrant [Docket No. 20] be denied.

Dated: August 31, 2005          *s/Raymond L. Erickson*
                                Raymond L. Erickson
                                UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 19, 2005**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 19, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.